UNITED STATES DISTRICT COURT
District of Maine

| | |
|---|---|
| ALISON P. BELL, )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>THE LINCOLN NATIONAL LIFE )<br>INSURANCE COMPANY, )<br>)<br>    Defendant ) | Civil Action Docket No._____ |

**COMPLAINT**

JURISDICTION

1. This Court has subject matter jurisdiction pursuant to 29 USC §1451(l) AND (2) (c) and other provisions of the Employee Retirement Income Security Act of 1974, as amended "ERISA, 29 USC §1001.

IDENTITY OF THE PARTIES AND FACTS OF THE CASE

2. The Plaintiff, Alison P. Bell, is a resident of Southwest Harbor, Maine.

3. The Defendant, The Lincoln National Life Insurance Company (hereinafter referred to as Lincoln) is a subsidiary of the Lincoln Financial Group with headquarters in Fort Wayne, Indiana and licensed in the State of Maine.

4. Lincoln issued a "Group Long-Term Disability Plan", hereinafter "the Plan" to all active "full-time employees" of the Mount Desert Island Hospital.

5. The Plan was issued in 2008 and was in effect in 2013.

6. The Plan is an employee benefit plan within the meaning of §1002(3) of the Employee's Retirement Income Security Act of 1974, as amended, ("ERISA") 29 USC §1002(3).

7. The Defendant, Lincoln, is a plan administrator within the meaning of §3(16)(B) of ERISA. Lincoln is the sole plan administrator of a the plan issued to all active employees of the Mount Desert Island Hospital at all times relevant to this Complaint.

8. The Plaintiff was an active employee of Mount Desert Island Hospital in 2013.

9. As an employee of The Mount Desert Island Hospital the Plaintiff was covered by the plan.

10. As the Plan Administrator, Lincoln is a fiduciary within the meaning of §3 (21)(A) of ERISA, 29 USC §1002 (21)(A). The Disability insurance plan provides payment of disability benefits if the employee becomes disabled from work.

11. The Plaintiff, Mrs. Alison Bell, is a 63-year-old woman.

12. The Plainitff has a nursing degree.

13. The Plaintiff has worked most of her life as a registered nurse.

14. The Plaintiff began working at the Mount Desert Island Hospital as a registered nurse in June of 1985.

15. The Plaintiff was a full-time employee of the Mount Desert Island Hospital in 2013 and was actively enrolled in the plan.

16. The Plaintiff's work as a registered nurse was very physical. It involved lifting patients, handling equipment, and standing on her feet for long periods of time during a 12-hour shift.

17. In May of 2013 the Plaintiff developed problems with her neck, shoulders and arms.

18. Over the course of the month of May, Mrs. Bell's condition slowly worsened. Finally, the pain got to the point where she was having problems writing and using scissors at work.

19. Mrs. Bell finally sought treatment with her primary care provider, Michael Heniser D.O., on May 29, 2013. The doctor first thought that Ms. Bell might be suffering from "somatic dysfunction". He gave her topical cream to help with her pain. He also suggested that she explore craniosacral therapy.

20. Mrs. Bell then sought treatment with an orthopedic specialist, Dr. Stuart Davidson on June 3, 2013. She reported pain in the right side of her neck, right shoulder, and pain and numbness radiating down her arm into her fingers. The doctor concluded that Mrs. Bell's

problems were the result of a degenerative disc condition in her neck causing a cervical radiculopathy. He prescribed oral steroids.

21.     Mrs. Bell had a significant increase in her right arm pain in June of 2013. She ended up being admitted to the Mt. Desert Island Hospital. She reported severe right shoulder pain. She was "totally overwhelmed". Besides her physical complaints, Mrs. Bell also reported being "very anxious, upset and tearful".

22.     Mrs. Bell spent several days in the hospital. She underwent testing and she was prescribed various medications.

23.     After leaving the hospital, Mrs. Bell followed up with Dr. Heniser. He referred her to pain specialists at Northeast Pain Management. He also took her out of work.

24.     The pain specialists at Northeast Pain Management gave her an epidural steroid injection, but the injection did not help.

25.     Mrs. Bell continued to treat with Dr. Heniser throughout the summer and fall of 2013. He treated her with medications and trigger point injections.

26.     Mrs. Bell returned to Dr. Davidson in November of 2013. He indicated that it was not clear to him whether Mrs. Bell was suffering from a cervical disc problem, thoracic outlet syndrome, or some combination of the two. The doctor thought that an EMG was warranted

to help sort out the cause of Mrs. Bell's ongoing problems. The doctor also stated: "..I do not think (she) can go back to her regular work activity as a floor nurse at this point in time".

27. On January 6, 2014, Dr. Davidson wrote a note indicating that Mrs. Bell only had a "part-time sedentary" work capacity.

28. On January 9, 2014 Mrs. Bell saw a vascular surgeon, Dr. Larry Flanagan. She reported ongoing right arm problems. In fact she was having so many problems that she was ..."unable to perform such things as opening pill packages, at times". The doctor concluded that Mrs. Bell really had three things going on at the same time. They included: 1) A clinically significant C5-6 cervical radiculopathy, 2) Thoracic outlet syndrome, and 3) musculoskeletal injury.

29. Dr. Flanagan recommended a neurosurgical evaluation as well as physical therapy.

30. Mrs. Bell followed up with a neurosurgeon, Joanna Swartzbaugh M.D. in the spring of 2014. Dr. Swartzbaugh diagnosed Mrs. Bell with cervical stenosis and recommended neck surgery. Surgery was performed in May of 2014. Mrs. Bell underwent a "cervical discectomy and fusion".

31. Unfortunately Mrs. Bell reported that "she really had seen no improvement in any symptoms at all" after her surgery. Of course the surgery obviously did not address Mrs. Bell's thoracic outlet problems at all.

32. Mrs. Bell continued to have problems with her right arm. She continued to treat with Dr. Heniser. He is prescribing numerous medications. As of November 2015 Mrs. Bell was taking Trazodone, Tylenol, Citalopram, Aleve, Hydrobromide, Clonazepam, Lidoderm Patch, Oxycodone and Neurontin.

33. In addition to her physical injury Mrs. Bell is also struggling psychiatrically. She was diagnosed with a "major depressive disorder" at the MDI Behavioral Health Center on July 20, 2015. Her doctors confirmed that Mrs. Bell's depressive disorder has impaired her ability to work.

34. Mrs. Bell remained out of work from May of 2013 until November 2013. She attempted to return to work on "light duty" in November of 2013. She worked from November 13, 2013 until December 23, 2013.

35. Unfortunately Mrs. Bell had to leave work again on December 23, 2013. She left work because she was in too much pain. She also found that she was "extremely distracted".

36. Mrs. Bell has not returned to work since that time. She has been awarded Social Security Disability Benefits.

37. Mrs. Bell continued to struggle with neck and arm pain as well as depression. Numerous medical records document Mrs. Bell's ongoing struggles. She has difficulty with bi-lateral arm pain and numbness. Her range of motion is very limited. She fatigues easily

and must lie down and rest frequently throughout the day. She needs help getting dressed and undressed. She cannot hold a phone to her ear, ride in a vehicle or lift a carton of milk. She has difficulty opening "pill packages".

38. In addition to her physical injury, Mrs. Bell is also struggling psychiatrically. She has been diagnosed with a "major depressive disorder". Her doctors confirmed that Mrs. Bell's depressive disorder has impaired her ability to work. In fact Mrs. Bell left work in December of 2013 because she was "extremely distracted".

39. Dr. Heniser reported that Mrs. Bell has an "extremely limited ability with her right arm". Mrs. Bell is right-handed.

40. Mrs. Bell cannot dress herself, talk on the phone or lift a carton of milk. On March 13, 2014 Dr. Heniser stated that: "It seems obvious to me that given her level of dysfunction caused by her chronic pain and "lameness" of her right UE, that she cannot perform any level of work going forward".

41. On January 16, 2014 Dr. Davidson stated that Mrs. Bell was: "..clearly disabled from her previous occupation and in fact I do not think it is any gainful employment at this point in time".

42. The plaintiff applied for short-term and then Long-Term Disability Benefits under the Lincoln Benefits Plan through the Mount Desert Island Hospital policy.

43. Her initial application for long-term disability was accepted on March 3, 2014. Benefits were awarded on a close-end period from August 27, 2013 until February 7, 2014.

44. Benefits beyond February 7, 2014 were initially denied. The defendant took the position that the Plaintiff no longer met the definition of disability under the Plan.

45. On or about March 17, 2014 the Plaintiff appealed the denial of her ongoing Long-Term Disability benefits.

46. On May 7, 2014 the Defendant overturned their denial of benefits and reinstated benefits from February 7, 2014 to ongoing.

47. The Plaintiff then received ongoing Long-Term Disability Benefits until August 27, 2015.

48. Under the Plan, Long-Term Disability Benefits are paid while the claimant is "totally disabled".

49. For the first 24 months after the "Elimination Period" the Plan defines "total disability" as the inability to "perform each of the Main Duties of his or her own occupation". It is called the "own occupation period".

50. The Plaintiff's "own occupation period" ended on August 27, 2015.

51. After the "own occupation period" the Plan defines "total disability" as being "unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow".

52. The Plan Administrator determined that the Plaintiff no longer met the definition of total disability and denied any long-term disability benefits after August 27, 2015.

53. The Plaintiff appealed the decision denying ongoing long-term disability benefits on or about December 30, 2015.

54. The Plan denied the appeal on or about March 23, 2016.

55. The Plaintiff again filed a request for an appeal on or about August 29, 2016.

56. Long-Term Disability benefits were again denied one final time on or about September 23, 2016. The Plaintiff was informed that she had exhausted all administrative appeals under the Plan.

57. The Plaintiff's disability is not attributable to military service.

58. The Plaintiff has exhausted the remedies available to her under the long-term disability plan.

COUNT I

59. The Plaintiff re-alleges and hereby incorporates by reference paragraphs numbers 1 through 58 as set forth in the Complaint herein.

60. The Plaintiff is totally disabled within the meaning of the long-term disability plan.

61. The Defendant's denial of disability benefits to the Plaintiff violated her rights under the Plan.

62. Lincoln breached its fiduciary duty to the plaintiff and violated 29 USC §1002 et. al. (ERISA) by denying disability benefits and failing to conform to the Plan as written.

63. The Plaintiff, as a Plan Participant, is entitled to the following relief:

WHEREFORE, Plaintiff demands that this Court:

    a. Enforce the Plan as written;

    b. Direct Lincoln to approve the Plaintiff's claim for benefits and to pay the Plaintiff such benefits;

    c. Award Plaintiff attorney fees, expenses, prejudgment interest and cost, and;

    d. Award such other relief as the Court deems just and proper.

DATED AT Topsham, Maine this 17th day of April, 2018.

                                      ___/s/ Kevin M. Noonan_____
                                      Kevin M. Noonan, Esq.
                                      Attorney for Plaintiff

McTeague, Higbee, Case,
Cohen, Whitney & Toker, P.A.
Four Union Park - P.O. Box 5000
Topsham, ME 04086-5000
(207) 725-5581
e-mail: knoonan@mcteaguehigbee.com